**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

|   |   |   |
|---|---|---|
| Holliday Amusement Company of Charleston, Inc. and Warren P. Holliday, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No.: 2:01-cv-210-CWH |
| vs. | ) ) | |
| State of South Carolina, Grady L. Patterson, Jr., in his official capacity As Treasurer of the State of South Carolina, and Governor Jim L. Hodges, Attorney general Charles M. Condon, Robert M. Steward, individually | ) ) ) ) ) ) | **ORDER** |
| Defendants | ) ) | |

This matter is before the Court on the plaintiff's motion for partial summary judgment on liability and the defendants' motion for summary judgment.

The plaintiff Holliday Amusement Company of Charleston, Inc. ("Holliday Amusement") and its sole shareholder Warren P. Holliday ("Holliday") owned and operated over 500 video gaming machines in South Carolina from 1975 until 2000 when the state legislature passed Act 125, making video gaming machines illegal. The video gaming machines were specially manufactured to comply with South Carolina gaming regulations. For example, the machines would only give a ticket rather than cash winnings, because South Carolina law required a human to dispense cash winnings. Therefore, there is no market for the plaintiff's video machines, and the costs of reformatting the machines to work in other states exceed the machines' market value. The stock of Holliday Amusement is now worthless.

On January 19, 2001, the plaintiffs filed a complaint for an unlawful taking, inverse condemnation, and unjust deprivation of civil rights pursuant to 42 U.S.C. §1983.  The plaintiffs seek a declaratory judgment that they are entitled to just compensation, an injunction requiring just compensation to be paid to them, or in the alternative, damages arising out of the unconstitutional taking.

The South Carolina Supreme Court has held that forfeiture of video gaming machines does not effect a taking of an owner's businesses.  Westside Quik Shop, Inc. v. Stewart, 534 S.E.2d 270, 303 (2000), cert. denied, 531 U.S. 1029 (2000).  On March 8, 2005, the Fourth Circuit Court of Appeals held that this action is not barred by the Rooker-Feldman doctrine because the doctrine does not apply when a party asserting the claim in federal court was not a party to the state proceedings.  Holliday Amusement v. S.C., 401 F.3d 534, 535-36 (4th Cir. 2005)(*citing* Johnson v. DeGrandy, 512 U.S. 997 (1994)).

Standard of Review

To grant a motion for summary judgment, this Court must find that the documents filed in support thereof establish that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56.  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record which demonstrates the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies this burden, the non-moving party then must produce specific facts demonstrating a genuine issue of material fact for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  If the non-moving party cannot do so, the court must grant the motion.

Although the Court must review the evidence in the light most favorable to the non-moving party, that party is required to do more than simply show that there is some metaphysical doubt as to the material facts.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the non-moving party must present specific facts showing there is a genuine issue for trial.  See Fed. R. Civ. P. 56(e) (emphasis added). Moreover, [t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party].  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

Plaintiff's Motion for Partial Summary Judgment on Liability

The plaintiffs claim that they are entitled to partial summary judgment on liability because South Carolina has effected a taking under the Fifth and Fourteenth Amendments and Lucas v. S.C. Coastal Council, 505 U.S. 1003 (1992).  The plaintiffs contend that their video gaming machines are property under the Constitution, and Act 125 worked an inverse condemnation and categorical taking.  The plaintiffs also contend that the Just Compensation clause establishes a self-executing cause of action, which waives sovereign immunity.

The elements of inverse condemnation under South Carolina law are: (1) an affirmative, positive, aggressive act on the part of the governmental agency; (2) a taking; (3) the taking is for public use; and (4) the taking has some degree of permanence.  See Sea Cabins on the Ocean IV Homeowners Association, Inc. v. City of North Myrtle Beach, 548 S.E.2d 595, 600 (S.C. 2001). South Carolina incorporates federal law to determine if governmental action amounts to a taking. See id.  By addressing the takings element, the Court simultaneously addresses both the inverse condemnation and takings causes of action.

The plaintiffs argue that they are entitled to just compensation for the value of their gaming machines as well as their business. This argument is without merit because the Supreme Court has held that market value "does not fluctuate with the needs of condemnor or condemnee but with general demand for the property, [and therefore,] evidence of loss of profits, damage to good will, the expense of relocation and other such consequential losses are refused in federal condemnation proceedings." U.S. v. Petty Motor Co., 327 U.S. 372, 377-378 (1946).

In Penn Central Transp. Co. v. City of N.Y., the City of New York had enacted a Landmark Preservation Law ("Law"), which was designed to protect the character of the City's historic landmarks. 438 U.S. 104, 109 (1978). Under the Law, a governmental agency had the authority to designate buildings for protection. Id. at 110. If a building was so designated, the owner had the obligation to obtain approval from the agency before making any exterior alterations to the building. Id. at 111-12. The agency designated Grand Central Station as a landmark under the Law. Id. at 115-116. The owners of the building, Penn Central, later wanted to make improvements to it. Id. at 116. The agency denied Penn Central's proposals, and Penn Central brought an action alleging that the Law worked a taking of the building. Id. at 117, 119. In concluding that the Law did not constitute a taking of Penn Central's property, Justice Brennan identified four factors that the Supreme Court had employed in making its determination: (1) whether the regulation substantially furthers a legitimate state interest; (2) the extent to which the regulation interferes with reasonable investment-backed expectation; (3) the regulation's economic effect on the landowner; and (4) the character of the government action. Id.

The Penn Central factors favor the defendants in this case. First, the Supreme Court has

held that a state has a legitimate interest in regulating gambling. Lawton v. Steele, 152 U.S. 133, 136 (1894). Second, due to historic, comprehensive regulations, video gaming machine owners lacked reasonable investment backed expectations to establish a taking. Westside v. Stewart, 534 S.E.2d at 274 (*citing* Lucas v. S.C. Coastal Council, 505 U.S. 1003 (1995); Mcqueen v. S.C. Coastal Council, 530 S.E.2d 628 (2000)). Third, categorizing property as contraband is within a state's police power. As long as the state comports with the Fourteenth Amendment's due process clause, the act is not a compensable taking under the takings clause of the Fifth Amendment. Westside Quik Shop, Inc. v. Stewart, 534 S.E.2d 270, 303 (2000). Last, "a 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by the government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." Penn Central v. Transp. Co. v. City of N.Y., 438 U.S. at 124. Video gaming machines were illegal in South Carolina until 1975. In 2000, video gaming machines became illegal again. Gaming is legitimately within the police power of the State to control. Lawton v. Steele, 152 U.S. 133, 136 (1894). The Penn Central factors do not support the plaintiff's takings claim.

The South Carolina Supreme Court has held that Act 125 did not constitute a taking, and the United States Supreme Court denied certiorari. Westside Quik Shop, Inc. v. Stewart, 534 S.E.2d 270 (2000), *cert denied*, 531 U.S. 1029; Joytime Distrib. & Amusement Co. v. State, 528 S.E.2d 647 (1999) *cert denied*, 529 U.S. 1087 (2000). Legislation enacted within the exercise of a state's police power rendering property illegal contraband does not constitute an actionable taking under the Fifth Amendment. "The forfeiture of contraband that comports with the Fourteenth Amendment's Due Process Clause is not a compensable taking under the Takings

Clause of the Fifth Amendment." Bennis v. Mich., 516 U.S. 442, 452. The plaintiffs argue that they are entitled to just compensation under Lucas. Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1027-28 (1992). However, in Lucas, the Supreme Court noted: "in the case of personal property, by reason of the State's traditionally high degree of control over commercial dealings, [the property owner] ought to be aware of the possibility that new regulation might even render his property economically worthless. Id. *citing* Andrus v. Allard, 444 U.S. 51, 66-67 (1979) (upholding the prohibition of the sale of eagle feathers). Therefore, Act 125 did not work a taking of the plaintiffs' gaming machines. The law does not support the plaintiffs' position, and their motion for summary judgment is denied.

Defendants' Motion for Summary Judgment

The defendants claim that they are entitled to summary judgment on the basis of: res judicata, collateral estoppel, and Eleventh Amendment immunity.

Res Judicata

Under the doctrine of res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." Montana v. United States, 440 U.S. 147, 153 (1979). "To establish a res judicata defense, a party must establish:  (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of parties or their privies in the two suits." Andrews v. Daw, 201 F.3d 521, 524-25 (4th Cir. 2000) (*quoting* Jones v. SEC, 115 F.3d 1173, 1178 (4th Cir. 1997), cert. denied, 523 U.S. 1072 (1998)).

Here, the first prong of the test has been satisfied; the South Carolina Supreme Court's

ruling in the Westside action is a final judgment on the merits, and the United States Supreme Court denied certiorari. Westside Quik Shop, Inc. v. Stewart, 534 S.E.2d 270, 303 (2000), cert. denied, 531 U.S. 1029 (2000). Second, there is no dispute that the earlier and later suits are nearly identical in the causes of action alleged.

The parties do dispute the third element- the identity of the parties or their privies in the two suits. In the Westside case, the plaintiffs sued Mr. Condon and Mr. Stewart in their official capacities. In this case, the defendants are suing Mr. Condon, Mr. Stewart, Governor Hodges in their individual capacities, Mr. Patterson in his official capacity, and the State of South Carolina. The defendants claim that the Westside case and the case at hand share an identity of the parties sufficient to apply res judicata. On the other hand, the plaintiffs maintain that the identity of the parties is different in the two cases and that there is no privity between the parties in this case and the Westside parties.

"[T]he privity requirement assumes that the person in privity is so identified in interest with a party to former litigation that he represents *precisely the same legal right* in respect to the subject matter involved." Daw, 201 F.3d at 525 (quoting Jones v. SEC, 115 F.3d at 1180) (emphasis by Daw court). Federal courts look to state law when determining issues of privity. See Brooks v. Arlington Hosp. Ass'n, 850 F.2d 191, 195 (4th Cir. 1988) ("A federal court should apply the federal doctrine of res judicata unless the application of res judicata touches an important question of state law, such as privity.")(*citing* Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986), cert. denied, 480 U.S. 932 (1987)).

"Privity, as used in the context of res judicata . . . does not embrace relationships between persons or entities, but rather it deals with a person's relationship to the subject matter of the

litigation." Wyndham v. Lewis, 354 S.E.2d 578, 579 (Ct. App. 1987) (*quoting* Richburg v. Baughman, 351 S.E.2d 164, 166 (1986)). "Under this rule, the term 'privity' means mutual or successive relationship to the same rights of property. . . . The term can also refer to a person so identified in interest with another that he represents the same legal rights. . . An agent and his principal are not, merely as such, in privity with each other." Id. (citations omitted).

Holliday was not a party to the Westside action but was a member of the South Carolina Coin Operators Association, which filed an amicus brief. Holliday Amusement v. S.C., 401 F.3d at 536. Holliday and the Westside plaintiffs were competitors. Although they both share an identical adverse position to the State of South Carolina with regard to Act 125, whether the parties are in privity for res judicata purposes is a genuine issue of material fact, and the defendants are not entitled to summary judgment on the basis of res judicata.

Collateral Estoppel

"Collateral estoppel prevents a party from relitigating in a subsequent suit an issue actually and necessarily litigated and determined in a prior action." Stone v. Roadway Express, Employer, 2005 WL 3754032 (S.C. Sup. Ct. 2006). The issues in Westside that were actually and necessarily litigated are:

> 1. Are plaintiffs entitled to compensation for the forfeiture of their video gaming machines?
> 2. Are plaintiffs entitled to compensation for the loss of their business?
> 3. Are the plaintiffs entitled to compensation for the real property upon which their businesses are located?

Westside v. Stewart, 534 S.E.2d at 272. The South Carolina Supreme Court held that the plaintiffs were not entitled to compensation for their video gaming machines, the loss of their

business, or the real property on which the business was located. Id. The South Carolina Supreme Court also held that Act 125 violates neither the Takings clause of the United States Constitution nor the South Carolina Constitution. Id.

The South Carolina Supreme Court has held that Act 125 is not compensable under the Takings Clause of the Fifth Amendment because owners were given a reasonable period of eight months to dispose of their machines outside of the state. Westside v. Stewart, 534 S.E.2d at 274 (*citing* Bennis v. Mich., 516 U.S. 442, 452 (1996). The South Carolina Supreme Court relied on the United States Supreme Court's holding that gaming is legitimately within the police power of the State to control. Lawton v. Steele, 152 U.S. 133, 136 (1894). The plaintiffs claim that the South Carolina Supreme Court's Westside holding is incorrect and relies on outdated United States Supreme Court rulings from the nineteenth century and prohibition era. However, these cases have not been overruled.

At oral argument, the plaintiffs argued that because Congress amended the U.S. Constitution for prohibition, a constitutional amendment is necessary for South Carolina to properly prohibit video gambling and thus ban the plaintiffs' gambling machines. This argument is without merit. "The forfeiture of contraband is an exercise of the government's police power, not its eminent domain power. A forfeiture is not subject to the Fifth Amendment's Takings Clause when it deprives an innocent owner of his property." United States v. $7,999.00 in U.S. Currency, 170 F.3d 843, 845-846 (8th Cir. 1999)(citing Bennis v. Mich., 516 U.S. 442, 452, 453 (1996).

In this case, the plaintiffs are in the same position as the Westside plaintiffs. The plaintiffs in this case claim that they are entitled to just compensation for the taking of their

Page 9 of 12

video gaming machines and the loss of their business.  Holliday claims that he lost all viable economic use of his property and is therefore entitled to just compensation pursuant to Lucas. Lucas v. S.C. Coastal Council, 505 U.S. 1003 (1992).  The South Carolina Supreme Court held that Act 125 does not constitute a taking under Lucas because the law substantially advances legitimate government interests and that due to historic, comprehensive regulations, video gaming machine owners lacked reasonable investment backed expectations to establish a taking. Westside v. Stewart, 534 S.E.2d at 274 (*citing* Lucas v. S.C. Coastal Council, 505 U.S. 1003 (1995); Mcqueen v. S.C. Coastal Council, 530 S.E.2d 628 (2000)).

The plaintiffs claim that no court has ever heard the issue of the right to just compensation, but this assertion has no merit.  The South Carolina Supreme Court discussed the issue of just compensation in Westside and held that video gaming machine owners and holders are not entitled to just compensation for their economic loss resulting from Act 125.  Westside v. Stewart, 534 S.E.2d at 274.  Therefore, the plaintiffs are collaterally estopped from litigating this case, and the defendants are granted summary judgment on the basis of collateral estoppel.

Eleventh Amendment Immunity- 42 U.S.C. §1983

The defendants claim that they are entitled to Eleventh Amendment immunity.  The plaintiffs sue Patterson in his official capacity because as State Treasurer, he is responsible for paying the debts of the state of South Carolina, and the plaintiffs allege that they are entitled to just compensation for their property.

The plaintiffs sue Governor Hodges in his individual capacity for signing Act 125 into law.  The plaintiffs sue Condon in his individual capacity because he stated that he intended to arrest and prosecute persons who violate Act 125.  The plaintiffs sue Stewart, chief of SLED, in

his individual capacity because he sent a memorandum to all video gaming licensees notifying them of his authorization to seize the machines and subject operators to criminal charges. Each of these men have merely acted within the scope of their official duties.

A state official may be sued in his official capacity only for prospective relief to conform the official's conduct to federal or constitutional law. Such a suit does not implicate the sovereign, even though relief effectively runs against the state. Ex Parte Young, 209 U.S. 123 (1908). However, even in their request for a declaratory judgment and injunctive relief, the plaintiffs are seeking monetary damages from all defendants. The Eleventh Amendment bars money damages that are to be paid from the funds of a State. Quern v. Jordan, 440 U.S. 332 (1978). Monetary relief from the state is not available in a §1983 claim regardless of how the plaintiffs style their complaint. Will v. Mich. State Police, 491 U.S. 58, 71 (1989). A federal court may enjoin state officials to conform their conduct to federal law even if the injunction will have an ancillary effect on the state treasury. Quern v. Jordan, 440 U.S. at 337 (*citing* Ex Parte Young, 209 U.S. 129 (1908)). However, in this case, the plaintiffs are simply seeking money damages of the value of their gaming machines from the state treasury. The defendants are granted summary judgment on the basis of Eleventh Amendment immunity.

The plaintiffs' motion for summary judgment is denied. The defendants are granted summary judgment on the basis of collateral estoppel, case precedent, and Eleventh Amendment immunity.

**AND IT IS SO ORDERED.**

_____
**C . WESTON HOUCK
UNITED STATES DISTRICT JUDGE**

May 5, 2006
Charleston, South Carolina